De Saussure, Chancellor.
The question for the consideration of the Court is whether the statute of Maryland was a divorce a mensa et thoro, or an absolute divorce a vinculo matrimonii f If it was a divorce a vinculo, then the defendant was entitled to all the rights in his present wife’s property, given by our laws to lawful husbands. If it was a divorce a mensa et thoro only, then James Naylor had no right to contract marriage with Mrs. Young or any other woman, and he acquired no right over her property by the mere form of an illegal marriage.
It was argued, thgit it was not competent for this Court to interpose its authority to give relief for three reasons : — 1st. Because it involved the exercise of ecclesiastical jurisdiction, which does not belong to Chan- *262 eery. 2d. That if there be any wrong done to the complainant, she has a remedy at law. 3d. That it decides on the law of another State.
As to the first, the Court by its interposition does not undertake to assume ecclesiastical jurisdiction. It does not undertake to pronounce judicially that the parties are lawfully *married or divorced; but it pronounces the effect of such a state of things. It decides merely incidentally and collaterally, as every Court is often bound to do. In the case of a criminal prosecution against a man, a woman may be called upon as a witness. She might be objected to as being the wife of the prisoner on trial, and incompetent to be a witness. The marriage might be denied. The course of the trial could not be stopped, and the criminal Judge must hear the evidence to ascertain whether she is the wife of the prisoner, and decide on it too — else he could not decide on her competency or incompetency. And the same difficulty would occur in all Courts of justice, if they could not decide on questions not originally within their jurisdiction.
On the second ground, that the complainant has a remedy at law, this does not appear to me to prevent the complainant asking relief of this Court, even if the fact were as alleged. One of the common grounds of jurisdiction in this Court, is to prevent multiplicity of suits. Now, in the case before us, the husband might disperse the property into various hands. There are lands, slaves and other property in question. A multitude of suits would be necessary to secure and protect the complainant’s rights. It appears to me that she comes here properly for relief.
The third ground of objection is, that this Court cannot decide on the construction and effect of the statute of Maryland, divorcing James Naylor from his wife. This objection is founded in error. It is the practice of all Courts of Justice, in all countries, to decide questions in cases brought before them, arising under the laws of other countries.— The enquiry is made, what is the law of that country in which the contract was made or was to be executed and when that is once ascertained, the Court gives it application to the case under,consideration. Thus the English Courts have decided in the famous case called the Dalrymple case, what constituted a marriage in Scotland. In that case, which has been followed by others, Sir Win. Scott decided that the facts proved, constituted a lawful marriage, (against the opinion of some of the most learne<l the ^Scottish bar) and consequently a second marriage contracted in England by one of the parties was null and void. This decision, which has never been questioned, is direct as to the right of this Court to exercise jurisdiction, and to decide on the question of the divorce under the Maryland statute.
We come then to the consideration of the question, w’hat was the intention and effect of the statute of Maryland. — Was it meant to be a divorce a mensa et thoro, or a vinculo matrimonii ?
The statute bears date on the 14th February, 1820, and is entitled “ An Act for the benefit of Margaret W. Naylor, of Charles County,” and is in these words — “Be it enacted by the General Assembly of Maryland, that Margaret W. Naylor of Charles County, be, and she is hereby divorced from bed and board, and mutual cohabitation with her husband, James Naylor of Georgia.” Now this statute does not divorce a vinculo matrimonii. — It is from bed and board, which is a mensa el *263 thoro — which, it is well understood, does not amount to such an absolute divorce, as entitles the parties to marry third persons. The addition of the words “ from mutual cohabitation,” does not enlarge the nature of the divorce. It is a mere repetition of the idea of separation from bed and board, which of itself would have amounted to a cessation of mutual cohabitation.
Williams and Irby, for the appellant.
Young, contra.
A volume of the statutes of Maryland wa# placed in my hands, in which I have examined various Acts from 1820 to 1832, divorcing sundry person therein named. By a careful reference to these acts, it appears that wherever the divorce from bed and board and mutual cohabitation is enacted, it does not appear to be considered an absolute and final divorce from the binding efficacy of the original marriage contract.
Wherever additional provisions were considered necessary to prevent the control of the acts of the husband, or for other purposes, they are expressly inserted in the statute. In a few cases where there are divorces from bed and board and mutual cohabitation, a special proviso is made that these should not amount to a power to the parties *to contract marriage again, lest those privileges should be construed into an absolute divorce. And in eases where the statute means to divorce the parties absolutely, it enacts the marriages to be null and void, and the parties are declared to be divorced’ a vinculo matrimonii.
It appears to me then to be quite clear, that the act of divorce between James Naylor and Margaret W. Naylor, was not intended by the lawgiver to amount to a divorce a vinculo matrimonii ; but was simply, as it expresses itself to be a divorce from bed and board and from mutual cohabitation. Now this does not authorize either of the parties to con-' tract another marriage. — Consequently the marriage contracted by James Naylor with Sarah Young, was null and void, and he acquired no marital rights by virtue thereof.
It is therefore ordered and decreed, that James Naylor shall not exercise any control over the property of the said Sarah Young; but shall forthwith deliver up the whole thereof to her, subject to her own acts. And the said property is hereby declared and decreed to be free from the demands, suits, judgments and executions of the creditors of the said James Naylor, or of any other person or persons, other than the said Sarah Young.
It is further ordered and decreed, that it be referred to the Commissioner to examine and report, what were the debts of Sarah Young, before the alleged marriage with James Naylor — also what were the debts justly and properly chargeable to her after said marriage ceremony. —And that in making up said account, the Commissioner do allow to James Naylor, all just and equitable demands against the said estate for proper improvements or reasonable expenditures.
From this decree the defendant appealed, on the grounds taken below.